Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **JILL ALBAN,** *on behalf of herself and all others similarly situated*, *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **KAWASAKI KISEN KAISHA, LTD.,** *et al.* <br><br> **Defendants.** | **Civil Action No.: 21-8852 (ES) (CLW)** <br><br> **OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendants Kawasaki Kisen Kaisha, Ltd. and "K" Line America, Inc.'s (together, "K Line") motion to dismiss Plaintiffs'[1] Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 6). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the motion is **GRANTED**.

## I.      BACKGROUND

Plaintiffs bring a putative class action against K Line for breach of contract. (D.E. No. 3 ("Am. Compl.") ¶¶ 87–97). They claim that K Line breached a Memorandum of Understanding ("MOU") that the parties had entered to settle a class action involving federal and state law claims. (*Id.*; *see also id.*, Ex. A ("MOU")).

The prior class action, which the Undersigned presided over, was part of a multidistrict litigation, which hereinafter will be referred to as the "MDL" or "*VCS* litigation." *See In re Vehicle*

---

[1]      Plaintiffs are Jill Alban, Grant Alban, Mary Arnold, Al Baker, Katrina Bonar, Steven Bruzonsky, Monica Bushey, Melinda Deneau, Jennifer Dillon, Jeffrey L. Gannon, Pamela Goessling, Thomas Goessling, Sheryl Haley, Lesley Denise Hart, Bruce Hertz, Maria Kooken, Adair Lara, Kori Lehrkamp, Michael Lehrkamp, John Levya, Daniel Morris, Judy Reiber, Richard Tomasko, John O'Neill Johnson Toyota, LLP, and Rush Truck Centers of Arizona, Inc.

*Carrier Servs. Antitrust Litig. (VCS I)*, No. 13-3306, 2015 WL 5095134, at *1 (D.N.J. Aug. 28, 2015).  In particular, in 2013, direct purchaser plaintiffs ("DPPs") and indirect purchaser plaintiffs ("IPPs") filed several class actions around the country against K Line and other defendants—all of whom, like K Line, were companies that provided "vehicle carrier services."  *Id.* at *1–2.  The DPPs and IPPs alleged, among other things, that K Line and others engaged in a global conspiracy to fix price and allocate the market and customers of vehicle carrier services.  *Id.* at *2.  Accordingly, the DPPs and IPPs brought class claims under federal and state antitrust laws and various state consumer protection and unjust enrichment laws.  *Id.* at *1 & n.2.  On October 8, 2013, the Judicial District Panel on Multi-District Litigation transferred the MDL to this Court for coordinated and consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.  *Id.* at *2.

On July 23, 2015, K Line and Plaintiffs, who were the IPPs in the MDL, executed the relevant MOU "[t]o settle all claims against K Line" in the MDL in exchange for K Line paying Plaintiffs and the putative class an undisclosed amount.  (MOU ¶ 2).  However, on August 28, 2015, the Court dismissed the DPPs' and IPPs' claims.  *VCS I*, 2015 WL 5095134, at *1.  The Court held that the Shipping Act of 1984 barred their Clayton Act claims and preempted their state law claims.  *Id.*  The Court further explained that the Federal Maritime Commission ("FMC") had "exclusive jurisdiction over administration of the Shipping Act's provisions."  *Id.* at *15 (quoting *Seawinds Ltd. v. Nedlloyd Lines, B.V.*, 80 B.R. 181, 184 (N.D. Cal. 1987)).  In a footnote, the Court acknowledged "that a 'settlement in principal' was reached between certain IPPs and the K-Line Defendants," but the Court "nevertheless" found that it "must . . . address the consolidated motions, which include the K-Line Defendants."  *Id.* at *1 n.1.

The IPPs moved for reconsideration, which the Court denied on April 25, 2016.  *See In re Vehicle Carrier Servs. Antitrust Litig. (VCS II)*, No. 13-3306, 2016 WL 1628879, at *1 (D.N.J.

Apr. 25, 2016).  In particular, the IPPs asked the Court to "retain jurisdiction over claims asserted against K Line . . . for the limited purpose of considering the parties' motions for preliminary and final approval of . . . settlements and to provide notice to the class of those motions so that all affected class members have notice and an opportunity to be heard." *Id.* (record citation omitted). The Court declined to do so, explaining that the FMC was the appropriate forum to hear the dispute; that "no motions for settlement approval were before this Court at the time the Opinion was delivered—indeed, no such motions have ever been filed"; and that the IPPs did not otherwise satisfy the standard for reconsideration.  *Id.* at *4.

The IPPs appealed, and the Third Circuit affirmed.  *See In re Vehicle Carrier Servs. Antitrust Litig. (VCS III)*, 846 F.3d 71 (3d Cir. 2017), *as amended* (Jan. 25, 2017).  Relevant to the settlement issue, the Third Circuit held that the Court did not abuse its discretion in denying the motion for reconsideration because the "IPPs did not submit a motion for preliminary and final approval of any settlement or a motion to stay the matter" and otherwise did not satisfy the standard for reconsideration.  *Id.* at 87–88.  The Third Circuit further held that, while the Court had subject-matter jurisdiction over the settlement agreements, the Court appropriately "exercised its discretion not to entertain the request to approve the settlements because it had determined that the FMC provided a forum to resolve Plaintiffs' dispute."  *Id.* at 88 n.19.

While the appeal was pending, IPPs filed complaints against K Line in the FMC.  The FMC dismissed the complaints for lack of standing under the FMC's direct-purchaser rule.  *In Re Vehicle Carrier Services (VCS IV)*, Nos. 16-0007 & 16-0010, 2019 WL 5558120, at *1 (FMC Oct. 21, 2019).  In light of that holding, the FMC declined to consider the settlements.

In the instant action, Plaintiffs claim that—despite their failures to obtain preliminary or final approval of a class action settlement in *VCS I*, *VCS II*, *VCS III*, and *VCS IV*—K Line is still

bound by the MOU to pay the settlement.  (Am. Compl. ¶¶ 1–8).  In support, Plaintiffs point to three provisions of the MOU.

First, Plaintiffs point to Paragraph 10.  (*Id.* ¶¶ 4 & 52).  Paragraph 10 specifies that the MOU is a binding agreement and is intended to survive materially adverse developments to Plaintiffs or K Line in the MDL.  (MOU ¶ 10).  While the parties "expect to enter into a long-form settlement agreement providing further details regarding th[e] MOU," and while they promise "to enter into good faith negotiations to execute the long-form agreement," the MOU clarifies that they "intend th[e] MOU to be a binding agreement effective as of [July 23, 2015]." (*Id.*).  And the MOU states that it is binding "regardless of whether the long-form settlement agreement is ever executed and regardless of the occurrence of any decisions, developments or events materially adverse to plaintiffs, K Line, or any of the other parties in the [MDL]." (*Id.*).

Second, Plaintiffs point to Paragraph 3, as later amended.  (Am. Compl. ¶ 47; *see also id.* Ex. B ("Am. to MOU")).  Paragraph 3 requires K Line to deposit the settlement amount into an escrow account within ten business days after counsel for the IPPs provides K Line with the necessary escrow account information.  (Am. to MOU ¶ 3).  Plaintiffs allege that they "have provided [K Line] with sufficient wiring and bank transfer information to effectuate transfer of the settlement amount," and "[m]ore than ten business days have passed since [K Line's] receipt of such information." (Am. Compl. ¶ 48).

Third, Plaintiffs point to Paragraph 11.  (*Id.* ¶ 55).  Paragraph 11 provides that the parties will include a most-favored nations clause in the final long-form settlement agreement.  (MOU ¶ 11).  That clause would reduce the settlement award to Plaintiffs if they settled their claims with other MDL defendants on more favorable terms.  (*Id.*).  However, the clause would "cease to be binding"—in other words, the settlement would not be reduced—"in the event the court grants

defendants' collective motion to dismiss the [IPPs'] complaints, denies class certification, or grants summary judgment in favor of defendants resolving the plaintiffs' damages claims in their entirety in favor of defendants, and none of [IPPs] prevail on appeal on the relevant motion." (*Id.*).

Taken together, Plaintiffs claim that the MOU is a binding agreement, survives events materially adverse to Plaintiffs, and specifies that the Court's previous decision on the motions to dismiss would only impact the most-favored nations clause. (Am. Compl. ¶¶ 51–53 & 55–57). In conclusion, Plaintiffs claim, K Line breached the MOU by failing to place the funds into escrow and by otherwise repudiating its obligation to perform. (*Id.* ¶¶ 47–48 & 69–71).

Plaintiffs further allege that K Line originally agreed that the MOU is a binding agreement. According to Plaintiffs, after the Court dismissed their claims in *VCS I*, K Line "**continued to negotiate** for months with Plaintiffs over the content of the long-form settlement and escrow agreements, thus confirming their understanding that their duty to pay the agreed-upon monies remained binding despite the district court's dismissal." (*Id.* ¶ 65 (emphasis in original); *see also id.* ¶¶ 66–67). But "[d]espite [its] initial acceptance of the continuing nature of [its] obligations, [K Line] abruptly halted [its] participation in the process envisioned in the MOU." (*Id.* ¶ 68).

Accordingly, Plaintiffs bring a claim for breach of contract against K Line. K Line moves to dismiss. (D.E. No. 6).

## II.   LEGAL STANDARD

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting

*James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.   DISCUSSION

K Line argues that the Amended Complaint fails to state a claim for breach of contract; that the MOU is void under Rule 23 of the Federal Rules of Civil Procedure; that absent class members from the *VCS* litigation are not parties to the MOU, rendering class release impossible; and that specific performance is unavailable.  (D.E. No. 6-1 ("Mov. Br.") at 9).  Because Plaintiffs do not plausibly plead a claim for breach of contract, and because specific performance is not an appropriate remedy in this case, the Court dismisses the Amended Complaint without addressing the validity of the MOU, the absent class members' status with respect to the MOU, or a federal court's authority, if any, to release claims that have not been brought and cannot be brought in a particular action.

The construction of a settlement agreement that "involves a right to sue derived from a federal statute" is governed under "federal common law principles."  *Williams v. Metzler*, 132 F.3d 937, 946 (3d Cir. 1997).  To state claim for breach of contract under federal common law, the plaintiff must allege the existence of a contract between the parties, that the defendant breached an obligation or duty arising under the contract, and that the plaintiff suffered damages as a result of the breach.  *See Perry v. Potter*, No. 06-1450, 2008 WL 200272, at *2 (E.D. Pa. Jan. 23, 2008) (citing *Westover v. United States*, 71 Fed. Cl. 635, 640 (2006)).

### A.     The Existence of a Contract

The MOU is in some form a binding agreement between the parties.  K Line does not appear to dispute this.  (Mov. Br. at 19).  Instead, K Line argues that it "agreed to be bound to the conditional language of the MOU, which specifies when and how its performance would become due."  (*Id.*).  Accordingly, Plaintiffs satisfy the first element of their claim.

### B.     Breach

K Line argues that the Amended Complaint does not plausibly allege the second element of the claim—that it breached its obligations under the MOU.  (Mov. Br. at 13–16).  The Court disagrees.

Paragraph 3 of the MOU requires K Line to deposit the settlement amount into an escrow account within ten business days after counsel for the IPPs "provide[s] counsel for K Line with the necessary escrow account information (including, but not limited to, the account number, the SWIFT code, the name and address of the account holder, and the beneficiary/receiver for the escrow accounts of the End-Payor Plaintiffs, the Automobile Dealer Plaintiffs, and the Truck and Equipment Dealer Plaintiffs, respectively)."  (Am. to MOU ¶ 3).  Plaintiff maintains that its counsel "provided [K Line] with sufficient wiring and bank transfer information to effectuate transfer of the settlement amount."  (Am. Compl. ¶ 48).

K Line argues that the Amended Complaint fails to plausibly allege it breached the MOU because Plaintiffs failed to plausibly plead that they complied with Paragraph 3.  (Mov. Br. at 13).  In support, K Line cites email correspondence in which the parties dispute the efficacy of the escrow information that counsel for Plaintiffs provided to counsel for K Line.  (*Id.* at 13–14 (citing D.E. No. 6-6, Ex. D)).

While Plaintiffs could have alleged more details on this issue, they plead enough facts at this early stage "'to raise a reasonable expectation that discovery will reveal evidence' of a breach of contract." *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267 (3d Cir. 2016) (quoting *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)). Plaintiffs allege that their counsel "provided Defendants with sufficient wiring and bank transfer information to effectuate transfer of the settlement amount"; they cite Paragraph 3 of the MOU, as amended; and they attach the MOU to their Amended Complaint. (Am. Compl. ¶¶ 47–48 & n.6; MOU ¶ 3; Am. to MOU ¶ 3). Plaintiffs correctly point out that "[a]ny factual dispute over the sufficiency of the information Plaintiffs have provided cannot be resolved on a motion to dismiss." (D.E. No. 18 ("Opp. Br.") at 20). Accordingly, Plaintiffs' pleading on this issue is sufficient.[2]

### C.      Damages as a Result of Breach

K Line argues that Plaintiffs fail to plausibly plead the third element of their claim—that they suffered damages as a result of K Line's failure to put money into the escrow account. (Mov. Br. at 9–11). The Court agrees.

Paragraph 6(d) of the MOU provides that settlement funds can be paid out of escrow to satisfy attorneys' fees and to pay claims to members of the putative class of IPPs—but only "after the Effective Date of the Settlement." (*Id.* ¶ 6(d)). Paragraph 8 defines the "'Effective Date' of the Settlement" as "the date that an order approving the Settlement has become a final and non-appealable order." (*Id.* ¶ 8).[3]

---

[2]      Because Plaintiffs sufficiently plead breach, the Court need not address K Line's argument that the Amended Complaint fails to sufficiently allege, in the alternative, that K Line committed an anticipatory breach. (Mov. Br. at 15–16).

[3]      Paragraph 6(d) of the MOU also provides that "if the court rejects the Settlement, the funds remaining in any escrow account shall revert to 'K' Line." (MOU ¶ 6(d)). The parties dispute the meaning of the term "reject." K Line argues the Court previously "rejected the entire concept of settlement approval proceedings" in the *VCS* litigation by "denying a motion to retain jurisdiction over the settlement," thus entitling K Line to the settlement funds pursuant to Paragraph 6(d). (Mov. Br. at 11). Plaintiffs respond that the Court did not "reject" the settlement because the term "reject," when read in the context of a class action settlement, refers to a court's finding that the settlement is not fair,

As K Line notes, "this Court in [the *VCS* litigation] did not approve the settlement or certify any of the indirect purchaser classes." (Mov. Br. at 10). Accordingly, "Plaintiffs would never receive funds from escrow, regardless of any action taken or not taken by [K Line]." (*Id.*). Thus, "Plaintiffs are in the same economic position today as they would have been if 'K' Line had acted as Plaintiffs contend it should have, and thus they were not injured by any conduct traceable to 'K' Line." (*Id.*). And without any such injury, their breach of contract claim fails.

In response, Plaintiffs insist that they suffered damages as a result of K Line's failure to deposit money into escrow because "Defendants have never paid any of the settlement funds" and because "[n]ot receiving funds owed is an injury." (Opp. Br. at 15). Conceding "that court approval is required under the MOU for funds to flow out of escrow to Plaintiffs," Plaintiffs argue that "this Court is perfectly positioned to grant that approval." (*Id.* at 11). Said another way, the Court can now certify the class and approve the settlement, thus causing the "Effective Date" to come to pass and the payments outlined in Paragraph 6 of the MOU to be made. (*Id.*).

The Court agrees with K Line. It is important to focus on the alleged breach: K Line allegedly breached the MOU by refusing to pay settlement funds into an escrow account—not by refusing to pay Plaintiffs the funds. K Line's refusal to pay into escrow did not cause Plaintiffs' harm, because K Line's performance would not have changed Plaintiffs' current economic position. *See Motamed v. Chubb Corp.*, No. 15-7262, 2016 WL 1029791, at *4 (D.N.J. Mar. 15,

---

reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e)(2). (*Id.* at 10–11). As Plaintiffs point out, that never occurred in the *VCS* litigation. (*Id.*). The Court disagrees with both parties. First, the Court in the *VCS* litigation did not reject the entire concept of settlement; instead, the Court held that the FMC provided an appropriate forum for the parties to dispute the settlement. Second, Paragraph 6(d) is best understood as entitling K Line to the settlement funds if class action settlement is no longer possible. Paragraph 6(d) introduces itself with the phrase, "[f]or the avoidance of doubt," which indicates that the parties intended to highlight something obvious: K Line is under no duty to pay the settlement funds into escrow if final approval of the settlement could not occur. However, this merely raises the question whether final approval of class action settlement is possible. That question is also implicated by K Line's arguments concerning frustration of purpose. (Mov. Br. 20–22). If final approval of the settlement is not possible, the purpose of the MOU is frustrated, and K Line is under no duty to perform.

2016) (dismissing breach-of-contract claim for failing to plead that performance "could have had any effect on [the plaintiff's] position"); *Saba v. Am. Fam. Life Assurance Co. of Columbus*, No. 16-9064, 2017 WL 3169056, at *3 (D.N.J. July 26, 2017) (similar). If K Line paid into the escrow account, Plaintiffs could only recover the settlement if they obtained final approval of the settlement, as they themselves concede. (MOU ¶¶ 6(d) & 8). But Plaintiffs have not offered how they could obtain final approval of the settlement under that scenario. If K Line paid into the escrow account, Plaintiffs would not have a breach-of-contract claim and thus no mechanism to get into federal court to obtain final approval. While Plaintiffs cite Rule 23 in their Amended Complaint, Rule 23 is not an independent cause of action. It is a procedural mechanism upon which class representatives can rely to aggregate claims while asserting independent, substantive causes of action on behalf of a class. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (explaining that "the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, *enlarge* or modify any substantive right'" (emphasis added) (quoting 28 U.S.C. § 2072(b))); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455 (2016) (similar); *see also Snyder v. TAMKO Bldg. Prod., Inc.*, No. 15-1892, 2019 WL 4747950, at *14 (E.D. Cal. Sept. 30, 2019) ("But nothing in Rule 23 specifically establishes injunctive relief as an independent cause of action."); *Vongrabe v. Rice*, No. 06-0152, 2006 WL 8439264, at *5 n.5 (M.D. Fla. Oct. 25, 2006) ("Rule 23.1 is a rule of procedure that sets forth pleading requirements for derivative actions; it does not provide an independent cause of action under federal law.").

Accordingly, even if K Line performed, Plaintiffs would be, as far as the Amended Complaint suggests, in the same economic position as they are in now. That is fatal to their claim for breach of contract.

### D.      Specific Performance

Finally, the Court agrees with K Line that Plaintiffs fail to plead an entitlement to specific performance.   K Line argues that specific performance is inappropriate because damages are sufficient to cure the alleged breach.   (Mov. Br. at 22–23).   K Line also argues that specific performance would be oppressively harsh because, even if K Line placed the settlement funds into escrow, it would not obtain classwide release because Plaintiffs cannot obtain approval of the settlement. (*Id.* at 23).   Plaintiffs concede that "K Line correctly states the rule of law" but argues that specific performance is the preferable remedy because:

> If this Court awards specific performance, then both parties get precisely what they bargained for in 2015. Plaintiffs and the members of the proposed class receive the settlement funds; K Line gets a release and covenant not to sue that is far broader than the relief it obtained through the dismissal of the Antitrust Action. Because specific performance requires Plaintiffs to grant K Line a class-wide release and covenant not to sue in exchange for payment of the settlement amount, specific performance would not, contrary to K Line's assertions, be inequitable.

(Opp. Br. at 27).

However, it would be inequitable to order specific performance because, as already noted, Plaintiffs have articulated no injury flowing from the alleged breach.  *See* Restatement (Second) of Contracts § 364(1)(b), (c) (May 2022 Update) ("(1) Specific performance or an injunction will be refused if such relief would be unfair because . . . (b) the relief would cause unreasonable hardship or loss to the party in breach or to third persons, or (c) the exchange is grossly inadequate or the terms of the contract are otherwise unfair.").  Plaintiffs have not alleged how K Line's failure to deposit funds into escrow caused their injury.  While Plaintiffs posit that they could receive those funds if the Court approves the settlement in this action, they do not explain how they could obtain final approval of the settlement if K Line had paid the funds into escrow.  As noted, if K

Line paid into escrow, Plaintiffs could not be here attempting to obtain final approval.  Rule 23, as stated, is not an independent cause of action; rather, it is a procedural mechanism that class representatives may use when asserting *other* causes of action on behalf of a class.  *See Dukes*, 564 U.S. at 367; *Tyson Foods*, 577 U.S. at 455; *Snyder*, 2019 WL 4747950, at *14; *Vongrabe*, 2006 WL 8439264, at *5 n.5.[4]  Without final approval of the settlement, K Line should not have to pay the funds into escrow.  Doing so would impose upon K Line an unreasonable hardship, and would be grossly unfair, because K Line would not receive what it bargained for: classwide release of the antitrust claims brought in the *VCS* litigation.  Accordingly, specific performance is not an appropriate remedy.

## IV.    CONCLUSION

For the above stated reasons, K Line's motion to dismiss the Amended Complaint is **GRANTED**.  The Amended Complaint is dismissed ***with prejudice***.


Date:   August 25, 2022

_____
Hon. Esther Salas, U.S.D.J.

---

[4]     On February 2, 2022, the Court ordered the parties to brief whether it has the authority to approve a settlement of claims that have not been brought and cannot be brought in this action.  (D.E. No. 34 at 1).  The Court instructed the parties to assume "that Plaintiffs cannot pursue compensatory or nominal damages for the breach but may pursue specific performance, which includes directing Defendants to deposit the agreed-upon settlement into escrow and to engage in good-faith negotiations to develop a long-form settlement agreement."  (*Id.*).  However, because Plaintiffs have not plausibly alleged an entitlement to specific performance, the Court does not, because it need not, wade into the parties' supplemental briefing.